**Charles DOE, et al., Appellees,**

v.

**Steve NORRIS, et al., Appellants.**

Supreme Court of Tennessee,
at Nashville.

May 9, 1988.

W.J. Michael Cody, Atty. Gen. and Reporter, Kevin Steiling, Asst. Atty. Gen., Nashville, for appellants.

Andrew J. Shookhoff, Vanderbilt Legal Clinic, Nashville, David A. Kozlowski, Legal Services of South Central Tennessee, Columbia, for appellees.

## OPINION

FONES, Justice.

The sole issue presented in this case is the constitutionality of the practice by the Tennessee Department of Correction, Division of Youth Services, pursuant to T.C.A. §§ 37–1–131 and 37–1–132, of commingling juvenile "status offenders" with delinquent offenders in secure correctional facilities.

In 1983 this declaratory judgment action was commenced by the next friend of Charles Doe, a minor committed to the custody of the Tennessee Department of Correction, Division of Youth Services, by a juvenile court order "because he does not get along with his parents." Doe sought a declaratory judgment that the practice by the Department of Correction of confining "unruly" children with delinquent children in secure correctional institutions was a violation of Article I, section 8 of the Tennessee Constitution, and the Fourteenth Amendment of the United States Constitution. In addition, Doe asked the court to permanently enjoin defendants and their successors from confining other unruly children in secure correctional institutions that also house delinquent children. Defendants are Steve Norris, Commissioner of the Tennessee Department of Correction; Doyle Wood, Assistant Commissioner of the Division of Youth Services of the Tennessee Department of Correction; and Ned McWherter, Governor of the State of Tennessee.[1]

This action was subsequently certified as a class action on behalf of all unruly children committed to correctional institutions housing delinquent children. In 1986 a non-jury trial was held, and the chancellor declared "defendants' practice of confining and commingling status offenders with delinquent offenders in secure correctional institutions operated primarily for delinquents" to be unconstitutional. The chancellor found that the practice violated the rights due process and equal protection guaranteed by the Tennessee Constitution and the United States Constitution. The chancellor then enjoined the defendants from placing any status offenders in correctional institutions operated primarily for delinquents and ordered defendants to transfer all status offenders confined in secure institutions for delinquents to other institutions. Finally, the chancellor found that plaintiffs were entitled, as prevailing parties under 42 U.S.C. § 1983, to recover their costs and their attorneys' fees.

A direct appeal to this Court is authorized since the sole determinative issue is the constitutionality of the practice by the Department of Correction, pursuant to T.C.A. §§ 37–1–131 and 37–1–132, of commingling status offenders (unruly children) and

---

1. Defendants McWherter and Wood are automatically substituted as parties by virtue of T.R. A.P. 19(c).

delinquent offenders in secure corrections institutions.[2]

This appeal requires this Court to examine and consider the treatment by the Tennessee juvenile court system of three groups of children. These groups, as classified and defined by the Legislature, are dependent and neglected children, unruly children, and delinquent children.

A dependent and neglected child is defined by the Legislature as either a child who does not have a parent or guardian or as a child who has not been properly cared for or supervised by his parent or guardian. T.C.A. § 37-1-102(10). A child found to be dependent and neglected is subject to a variety of dispositions by a court. The court may allow the child to remain with his parents or guardian under court supervision; or, if it is in the best interest of the child, the court may remove the child from his parents or guardian and place the child temporarily in the custody of the State Department of Human Services or any other agency authorized by law to care for the child. T.C.A. § 37-1-130(a). However, a dependent and neglected child may not be committed or confined in a facility for delinquent children unless the dependent child is also found to be a delinquent. T.C.A. § 37-1-130(b).

A delinquent child is a child who has committed an act that would have been a crime if committed by an adult and who is found to be in need of treatment. T.C.A. § 37-1-102(9). A child adjudicated delinquent is subject to the same disposition as a dependent and neglected child. T.C.A. § 37-1-131(1). In addition, a delinquent child may be fined, ordered to pay restitution, placed on probation, or committed to the custody of the State Department of Correction. T.C.A. § 37-1-131(2)-(7). If committed to the Department of Correction, a delinquent child may be placed in a foster home, group home, or "suitable state institution." T.C.A. § 37-1-137(5). Suitable state institutions include secure correctional facilities operated by the Department of Correction.

The category of concern in this case is that of unruly children. T.C.A. § 37-1-102(21) defines an unruly child as a child who:

(A) While subject to compulsory school attendance is habitually and without justification truant from school;

(B) Is habitually disobedient of the reasonable and lawful commands of his parent, guardian, or other custodian and is ungovernable;

(C) Has committed an offense applicable only to a child; or

(D) Is away from the home or residence of his parents or guardians without their consent. Such child shall be known and defined as a "runaway";

(E) If any of the foregoing is in need of treatment or rehabilitation.

Unruly children are also called "status offenders" because their conduct would not be a crime if committed by an adult and their acts are proscribed by the Legislature solely because of status—in this case, age. In Tennessee, if a child is found to be an unruly child, he may be treated by the court as a dependent or neglected child. T.C.A. § 37-1-132(a). In addition, the child may be fined. *Id.* However, if the proscribed act by an unruly child, though not a delinquent act, violates a valid court order, the child is subject to a disposition as if the child were a delinquent. T.C.A. § 37-1-132(b). Therefore, an unruly child who violates a valid court order may be committed to the custody of the Tennessee Department of Correction and may be placed in a secure facility with delinquents. In addition, an unruly child may be placed in a secure facility if that placement is found by the court to be the "least drastic or restrictive alternative" for the child. T.C.A. § 37-1-132(b).

The plaintiffs in this case are unruly children (status offenders). They have committed acts such as running away from

---

2. It is probable that the legislature's enactment of the 1985 Tennessee Public Acts (1st Extraordinary Session) ch. 6 § 3 (now T.C.A. § 37-1-163) will prevent such commingling in the future. The American Correctional Association's accreditation standards mandate the separation of status offenders from delinquent offenders in secure correctional institutions.

home and being truant from school—so called status offenses. Some of these children have also been sexually abused, some have severe emotional problems, and some have emotional disorders caused by family crises. They have not committed any acts that violate the criminal statutes of this State. However, because of their actions these status offenders have been committed to the custody of the Department of Correction.

When a status offender is committed to the custody of the Department of Correction, the offender undergoes a classification process designed to determine a permanent program for the child. During the evaluation process, status offenders are given priority for remaining in the community, and an attempt is made to utilize local resources. If, during this period, the status offender does something which will harm either himself or others, the child may be placed in an institution for the remainder of the classification process.

Once the classification process is complete, the classification team makes its recommendations for a permanent program that will best facilitate the child's return to the community. It may recommend placement of the status offender in one of four correctional institutions, a Department of Correction group home, or a foster home.[3] In addition to these facilities, the Department has available for its use private contract placements in the community and residential mental health placements. If a status offender is classified to an institution or secure juvenile facility, the Assistant Commissioner of the Department of Correction, or his designee, must approve the classification before the child is placed in the facility. Transfers to secure facilities are approved when the status offender runs away either into the streets or out of state or is suspected of engaging in prostitution or being involved with drugs.

Plaintiffs in this case are status offenders who have had prior experience in either group homes or contract placements. After a disciplinary hearing and subsequent reclassification, they have been committed to the Spencer Youth Center in Nashville. The Spencer Youth Center [Spencer] is a secure correctional facility for delinquent children.[4] Spencer offers the children committed there a minimal educational program. Spencer also has counselors for the children and programs designed for correcting the anti-social and rule-breaking behavior of both status offenders and delinquents. Although they are not delinquents, status offenders at Spencer are treated in the same manner as delinquents. They are housed in the same dormitories with the delinquent children and follow the same routine; and they are subject to the same discipline as the delinquent children.

According to the testimony of the various expert witnesses and professionals there is more than one way to treat status offenders. Although treatment in the community is the preferred method, commitment to a secure facility is appropriate for status offenders who are persistent runaways. The professionals and expert witnesses all agreed however that status offenders and delinquents should not be housed together in secure correctional facilities.

Based upon the foregoing, the chancellor found that the practice of commingling status offenders with delinquent offenders in correctional institutions is psychologically and socially harmful to the status offenders. In addition, the chancellor found that this method of treatment for status offenders is punishment and not treatment. Finally, the chancellor found that this method of treatment of status offenders is not rationally related to a legitimate government interest. Therefore, the chancellor

---

**3.** The Department of Correction operates four secure facilities. These are the Spencer Youth Center in Nashville; the Wilder Youth Center in Sommerville; the Taft Youth Center in Pikeville; and the Tennessee Youth Center in Joelton. In addition to the four secure correctional institutions, the Department of Correction operates twelve group homes; forty-three foster homes.

**4.** Only five percent of the total inmate population at Spencer are status offenders. However, thirty to forty percent of Spencer's female population are status offenders.

concluded that the defendant's policy and practice of confining status offenders with delinquent offenders violates the principles of due process under the Tennessee Constitution and the United States Constitution. The chancellor also found that the state's practice of confining status offenders to secure penal institutions, but not so confining dependent and neglected children, violates the principles of equal protection under the Tennessee and United States Constitutions. The chancellor found that dependent and neglected children and status offenders are similarly situated because neither group has been convicted of a crime. Status offenders may be incarcerated with delinquent offenders, while dependent and neglected children may not. The chancellor found that this distinction in treatment was not rationally related to the state's interest in protecting status offenders and declared the practice to be unconstitutional.

Defendants have appealed to this Court and challenge the chancellor's conclusions of law. This case does not involve, and the parties have not questioned, the propriety of confining status offenders in secure facilities operated solely for status offenders. In addition, this case does not involve the propriety of commingling status offenders and delinquents in nonsecure facilities, or staff secure facilities, such as group homes. Thus, our decision is limited to the issues stated herein:

> Whether the defendants' practice of confining and commingling status offenders with delinquent offenders in secure correctional facilities violates the guarantees of substantive due process and equal protection contained in the Tennessee and United States Constitutions?

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." A similar provision in our state constitution—Article I, section 8—provides "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property but by the judgment of his peers or the law of the land." Although these two provisions are synonymous, they are not identical. *State ex rel. Anglin v. Mitchell*, 596 S.W.2d 779, 786 (Tenn.1980).

■ This Court, in its capacity as the final arbiter of the Tennessee Constitution, is only bound by the interpretations of the due process clause of the United States Constitution to the extent that they establish a minimum level of protection. *Miller v. State*, 584 S.W.2d 758, 760 (Tenn.1979). That conformity is mandated by the principles of federalism embodied in the Supremacy Clause of the United States Constitution. In the interpretation of the Tennessee Constitution, this Court is always free to expand the minimum level of protection mandated by the federal constitution. *Id.* As the chancellor found the defendants' practice to be unconstitutional under both the Tennessee and United States Constitutions, our review and decision shall be in conformity with the protections provided by both constitutions.

### SUBSTANTIVE DUE PROCESS [5]

Plaintiffs alleged and the chancellor found that the defendants' practice of con-

**5.** The chancellor denied plaintiffs' prayer for relief based upon the cruel and unusual punishment provisions of the Eighth Amendment to the United States Constitution and Article I, section 16 of the Tennessee Constitution. These two clauses, which are identical, were designed to protect those convicted of crimes. *Whitley v. Albers*, 475 U.S. 312, 318, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). The more protective due process standard applies to the conditions of confinement of detainees who have not been convicted of a crime. *Schall v. Martin*, 467 U.S.

253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) (pretrial juvenile detainees); *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (involuntarily committed mental patients); *Gary H. v. Hegstrom*, 831 F.2d 1430 (9th Cir.1987) (juveniles). As plaintiffs in this case have not been convicted of a crime, the more protective due process provisions are applicable. Therefore, the denial of plaintiffs' claim for relief based on the protections from cruel and unusual punishment was proper.

fining status offenders in secure facilities operated primarily for delinquent children and commingling the two groups violates the guarantees of substantive due process contained in the Tennessee and federal constitutions. The chancellor found that this practice is psychologically and socially harmful to the status offenders and results in punishment of the status offenders rather than treatment. Therefore, the chancellor concluded that the practice in question is not rationally related to a legitimate governmental interest.

Since the United States Supreme Court's decision of *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), it has been clear that children, as well as adults, are entitled to the protections afforded by the Constitution; especially when their interest in physical freedom is threatened by the state. *See Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984); *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *State ex rel. Anglin v. Mitchell, supra,* 596 S.W.2d at 789 (Tenn.1980); *State v. Jackson,* 503 S.W.2d 185 (Tenn. 1973). However, the juvenile's interest in physical freedom is modified by the fact that "juveniles, unlike adults, are always in some form of custody." *Schall v. Martin, supra* 467 U.S. at 265, 104 S.Ct. at 2410. By definition, a juvenile is in the custody of his parents until majority; and, if during minority the parental control falters, the state may assume control over the child by acting in its *parens patriae* capacity. This *parens patriae* interest possessed by the state allows the state to act for the preservation and promotion of the child's welfare, the child's liberty interest may be subordinated to the state's *parens patriae* interest, and the state may impose restrictions upon the child, including confinement. *Id.* However, as children also have due process rights, the restrictions imposed by the state must serve a "legitimate regulatory purpose." *Id.* at 269, 104 S.Ct. at 2412.

One purpose of confinement which the state may not assert when acting in its *parens patriae* capacity is retributive punishment. *Schall v. Martin, supra* at 269, 104 S.Ct. at 2412. The only time the state may punish any individual is when the state acting in its capacity as prosecutor for the violation of criminal laws has tried and convicted the individual as a criminal. *Id.; see Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984); *Jones v. United States,* 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983); *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Santana v. Collazo,* 714 F.2d 1172 (1st Cir.1983), *cert. denied,* 466 U.S. 974, 104 S.Ct. 2352, 80 L.Ed.2d 825 (1984). If punishment is imposed without a prior adjudication of guilt, the punishment is *"per se* illegitimate." *Schall v. Martin, supra* 467 U.S. at 272, 104 S.Ct. at 2414. Plaintiffs in this case have not been adjudicated delinquent children who have been convicted of a crime. Instead, plaintiffs in this case are unruly children, who by definition have not been convicted of crimes. In fact, T.C.A. § 37–1–133 expressly provides that the disposition and proceedings relative to juveniles are noncriminal and that no criminal disabilities attach to the juveniles as a result of those proceedings. Therefore, retributive punishment of plaintiffs is clearly not a legitimate purpose for the state to assert. If, as the chancellor found, the conditions of plaintiffs' confinement amount to punishment, the confinement is "per se" illegitimate.

In determining whether the confinement involved herein is punishment, this Court must decide whether the confinement is imposed for the purpose of punishment or whether it is an incident of a legitimate governmental purpose. *Bell v. Wolfish, supra,* 441 U.S. at 538, 99 S.Ct. at 1873. Where, as here, no showing of an express intent to punish is made, "that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.'" *Id.,* 99 S.Ct. at 1874 (quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–568, 9 L.Ed. 2d 644 (1963)).

[I]f a particular condition or restriction of ... detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* at 539, 99 S.Ct. at 1874 (footnote and citation omitted).

Defendants argue that their policies and practices are rationally related to the legitimate governmental purposes espoused by T.C.A. § 37–1–101. These include:

1. Providing for the care, protection, and wholesome moral, mental and physical development of children coming within its provisions;

2. Removing from children committing delinquent acts the taint of criminality and the consequences of criminal behavior and to substitute therefor a program of treatment, training, and rehabilitation;

3. Generally deinstitutionalizing children who have not been found to be delinquent.

T.C.A. § 37–1–101(1), (2), (6). The purposes presented by defendants are unquestionably legitimate governmental purposes. We must determine if the placement of plaintiffs in secure penal facilities operated primarily for delinquents and the commingling of the plaintiffs with these delinquents is rationally related to these purposes.

Status offenders are incarcerated at Spencer for an indefinite period of time. Once committed, these children are commingled with the delinquents in every respect. The status offenders and delinquents are housed in the same dormitories, follow the same daily routine, and are subject to the same disciplines. Misbehavior may be punished by isolation for a period up to 72 hours.[6] Among the incidents of misconduct reported during a one week

period in 1985 were 41 incidents of assault/battery; 27 incidents of threatening the staff; and 18 incidents of threatening a student. Other reported incidents include possession of a deadly weapon, burglary, theft, arson, extortion, and substance abuse. Although the facility provides counseling and a minimal educational program, the expert witnesses testified that status offenders and delinquents should not be housed together in secure correctional facilities. This practice of commingling status offenders with delinquents was also found to be psychologically and socially harmful to the status offenders.

■ Based upon the foregoing, we conclude that the chancellor was correct in his determination that the commingling of status offenders with delinquent children in secure penal facilities operated for delinquent children was not rationally related to a legitimate governmental purpose and was therefore punishment. *See United States v. Salerno,* 481 U.S. ——, ——, 107 S.Ct. 2095, 2102, 95 L.Ed.2d 697 (1987) (detainees housed in separate facilities); *Allen v. Illinois,* 478 U.S. 364, 373, 106 S.Ct. 2988, 2994, 92 L.Ed.2d 296 (1986) (noncriminal psychiatric patient separate from felons); *Schall v. Martin, supra* 467 U.S. at 271, 104 S.Ct. at 2413 (pretrial detention of juveniles for limited time); *Doe v. Gaughan,* 808 F.2d 871 (1st Cir.1986). Therefore, as this confinement amounts to punishment of plaintiffs without an adjudication of guilt, the practice violates the principles of substantive due process under the Tennessee and United States Constitutions.

### EQUAL PROTECTION

Plaintiffs also argued at trial and the chancellor found that defendants' practice of commingling status offenders with delinquents in secure penal facilities violates plaintiffs' equal protection rights under the Fourteenth Amendment to the United States Constitution and Article I, section 8 of the Tennessee Constitution. The chancellor found that status offenders and de-

---

6. During a one week period, thirty children were placed in isolation for 72 hours; twelve were placed in isolation for 18 hours; two were

placed in isolation for 12 hours; and two were placed in isolation for 36 hours.

pendent and neglected children are similarly situated, neither group having been convicted of a crime, and that confining status offenders but not confining dependent and neglected children violated plaintiffs' equal protection rights under both constitutions.

The concept of equal protection espoused by the federal and our state constitutions guarantees that "all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 562, 64 L.Ed. 989 (1920); *see Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *State ex rel. Department of Social Services v. Wright,* 736 S.W.2d 84 (Tenn.1987). Conversely, things which are different in fact or opinion are not required by either constitution to be treated the same. *Plyler v. Doe, supra* 457 U.S. at 216, 102 S.Ct. at 2394. "The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States," and legislatures are given considerable latitude in determining what groups are different and what groups are the same. *Id.* In most instances the judicial inquiry into the legislative choice is limited to whether the classifications have a reasonable relationship to a legitimate state interest. *Id.; see State v. Southern Fitness and Health, Inc.,* 743 S.W.2d 160, 164 (Tenn.1987); *Harrison v. Schrader,* 569 S.W.2d 822, 825 (Tenn.1978). However, if a classification adopted by a legislature disadvantages a "suspect class" or impinges upon the exercise of a "fundamental right," the legislative classification is subject to strict scrutiny by the courts. *Plyler v. Doe, supra* 457 U.S. at 217, 102 S.Ct. at 2395. With such classifications, the State must demonstrate "that its classification has been precisely tailored to serve a compelling governmental interest." *Id.; Harrison v. Schrader, supra,* 569 S.W.2d at 825.

The chancellor utilizing the rational basis test declared the defendant's practice to be unconstitutional. On appeal, the plaintiffs argue that the practice impinges upon a fundamental right and therefore that the appropriate test to be applied is the compelling interest test. Our first inquiry must therefore be a determination of the appropriate test to be utilized.

Plaintiffs argue that their fundamental right to personal liberty is impinged by the State's practice of incarcerating status offenders in penal institutions. The defendants argue that, while the United States Supreme Court has recognized many rights as explicitly or implicitly guaranteed by the United States Constitution and therefore fundamental, that court has never recognized as fundamental the right to personal freedom. *E.g., Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (rights of a uniquely private nature); *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed. 2d 92 (1972) (right to vote); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to interstate travel); *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (rights guaranteed by the first amendment); and *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (right of procreation).

■ According to the United States Supreme Court, to determine whether a particular right is deserving of the strict scrutiny analysis, the Constitution must be examined "to see if the right infringed has its source, explicitly or implicitly, therein." *Plyler v. Doe, supra* 457 U.S. at 217 n. 15, 102 S.Ct. at 2395 n. 15. Utilizing this analysis, we cannot conceive of any right more fundamental under either the Tennessee Constitution or the federal constitution than the right to personal liberty. *See In re C.H.,* 683 P.2d 931 (Mont.1982); *People v. Olivas,* 17 Cal.3d 236, 131 Cal.Rptr. 55, 551 P.2d 375 (1976). Clearly, none of the rights already recognized as fundamental by the United States Supreme Court would have meaning without the right of freedom from physical restraint. Although that Court has not ruled on this express issue, in light of the Court's statement in *United States v. Salerno, supra* 481 U.S. at ——, 107 S.Ct. at 2103, we are confident it would hold that the right to personal freedom is a fundamental right under the United States Constitution. In that case, which involved the issue of pretrial detention of persons charged with a crime, the Supreme Court

stated, "[w]e do not minimize the importance and fundamental nature of [the individual's] right [in liberty]." *Id.* Therefore, we conclude that the individual's right to personal liberty is a fundamental right for equal protection purposes.

■ As the detention of the plaintiffs in this case in secure facilities operated for delinquents impinges upon the fundamental right of personal freedom, we must examine that classification and determine if the State has demonstrated that "its classification has been precisely tailored to serve a compelling government interest." *Plyler v. Doe, supra,* at 457 U.S. at 217, 102 S.Ct. at 2395. Plaintiffs concede that the State has a compelling interest in protecting status offenders from harm. We agree that the state's interest in protecting these status offenders from harm is a compelling interest; however, we also find that the State's practice of placing the plaintiffs in secure penal facilities and commingling them with delinquent offenders is not, in light of the findings made by the chancellor, a practice "precisely tailored" to serve this compelling interest. We therefore conclude that the chancellor did not err in determining that defendant's practice violates the guarantees of equal protection under the Tennessee and United States Constitutions.

In light of the foregoing, the judgment of the trial court is affirmed. This case is remanded to the trial court for any further appropriate proceedings consistent with this opinion. Costs are taxed against defendants.

HARBISON, C.J., and COOPER, DROWOTA and O'BRIEN, JJ., concur.