**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**JUNE SESSION, 1997**



FILED

September 30, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9607-CC-00323** |
| | ) | |
| Appellee, | ) | |
| | ) | **DICKSON COUNTY** |
| | ) | |
| **V.** | ) | |
| | ) | **HON. LEONARD MARTIN, JUDGE** |
| **MARTHA L. PENNINGTON,** | ) | |
| | ) | |
| Appellant. | ) | **(DUI CERTIFIED QUESTION OF LAW)** |

<u>FOR THE APPELLANT:</u>

**MICHAEL J. FLANAGAN**
Attorney at Law
95 White Bridge Road #208
Nashville, TN  37205

<u>FOR THE APPELLEE:</u>

**JOHN KNOX WALKUP**
Attorney General & Reporter

**DARYL J. BRAND**
Assistant Attorney General
425 Fifth Avenue North
2nd Floor, Cordell Hull Building
Nashville, TN  37243

**DAN M. ALSOBROOKS**
District Attorney General

**ROBERT S. WILSON**
Assistant District Attorney General
P.O. Box 580
Charlotte, TN  37036

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Martha L. Pennington, entered a guilty plea to the offense of driving under the influence of an intoxicant (DUI) in the Circuit Court of Dickson County. The Defendant received a sentence of eleven (11) months and twenty-nine (29) days, with all but forty-eight (48) hours of the sentence suspended. She was fined $350.00 and ordered to pay court costs. With the consent of the State and the trial court, Defendant explicitly reserved a certified question of law dispositive of the case pursuant to Tennessee Rules of Criminal Procedure 37(b)(2)(i). The certified question of law in this appeal is: "Whether or not the detention of the defendant, in this case, under the policy of the Dickson County Sheriff's Department, constitutes punishment so as to preclude further prosecution on double jeopardy grounds or violates the defendant's due process rights." After a thorough review of the record, we affirm the judgment of the trial court.

Counsel for Defendant also represented another client in an unrelated case, with the identical issue presented as a certified question of law in this court. See State v. James E. Irwin, No. 01C01-9603-CC-00096, Dickson County, (Tenn. Crim. App., Nashville, March 27, 1997) (Rule 11 application filed May 19, 1997). Both cases arose as a result of a policy decision of the Dickson County Sheriff's Department regarding post-arrest detention in all DUI cases for a minimum period of time before allowing release on bail. Testimony of Dickson County Sheriff Tom Wall in the Irwin case was made an exhibit by stipulation of the parties in the case sub judice. Also, a transcript of the entire suppression

hearing in the <u>Irwin</u> case, including the findings of fact and conclusions of law in the trial court in that case was made an exhibit in Defendant Pennington's case. Furthermore, the parties stipulated in the present case that the same policy of post-arrest detention was in effect in Defendant Pennington's case as was in effect at the time of the defendant's arrest in <u>Irwin</u>. The same trial court judge heard both cases. Only the Defendant testified during the suppression hearing. The affidavit of complaint which led to the issuance of the arrest warrant for Defendant and the written results of the Intoximeter 3000 test given to Defendant following her arrest were admitted into evidence by stipulation.

FACTS

In the early evening hours of September 30, 1995, Officer Andre Orr of the Dickson Police Department saw a pickup truck driven by Defendant swerve on Highway 47 in Dickson. Orr turned his patrol car around and began following the truck, observing it weaving from the left to the right side of the road. He stopped the vehicle and observed "a strong odor of alcohol" upon the Defendant. She admitted to drinking one beer. While the affidavit of complaint states that Defendant was given three (3) field sobriety tests, it does not provide the results of those tests. However, the next sentence in the affidavit states that the officer placed the Defendant under arrest for DUI. At 6:40 p.m. Defendant registered a 0.13 on the Intoximeter 3000 test.

Following her arrest, Defendant was first taken by Officer Orr to the Dickson Police Department. There Defendant made a phone call to Joe Fizer, a bail bondsman. She made arrangements for Mr. Fizer to make her bond and

pick her up at the Dickson County Jail in Charlotte. Defendant was then transported from the Dickson Police Department to the jail, arriving at 8:00 p.m. Mr. Fizer was waiting at the jail when she arrived. However, Defendant was not permitted to be released until 2:00 a.m. the following morning when Mr. Fizer took Defendant to meet her boyfriend, who in turn took Defendant to her home.

At the time of Defendant's arrest, the Dickson County Sheriff's Department had a policy of holding a defendant who had been arrested for DUI a minimum of six (6) hours before allowing the defendant to be released on bail. Depending upon the defendant's level of intoxication, he or she might be held longer than the minimum six (6) hour period. In the words of Sheriff Wall, "[t]hose were minimum times. In other words, after six hours, on a DUI, if the jailor felt like they were not misbehaving, they could get them booked in and they could make bond and leave." Sheriff Wall further elaborated that public safety was the "number one" issue which led to the policy. Also, the difficulty of having an intoxicated defendant fingerprinted and "booked" was a concern leading to the policy. Sheriff Wall later testified during cross-examination by the State that the primary reason for the policy was to keep the defendants from being released in an intoxicated condition where defendants in DUI cases might harm themselves or third persons.

Defendant testified that in her opinion she was not under the influence of alcohol while she was being incarcerated on the night of her arrest. There is no proof that Defendant was unruly, abusive, or uncooperative from the time of her arrest until she was released on bail. The only proof of her condition regarding intoxication was the 0.13 intoximeter reading at 6:40 p.m.

-4-

DOUBLE JEOPARDY


On appeal, Defendant argues that both the Tennessee and United States Constitutions protect a person from multiple punishments for the same offense. Specifically, in Whitwell v. State, our supreme court stated, "the Tennessee and United States constitutional provisions against double jeopardy protect an accused from the peril of both a second punishment and a second trial for the same offense." 520 S.W.2d 338, 341 (Tenn. 1975) (emphasis supplied).


However, the recent case of State v. Jefferson C. Pennington, ____ S.W.2d ____, No. 01-S-01-9607-PB-00133, Davidson County (Tenn., at Nashville, Sept. 8, 1997), addressed a factual situation similar to the case sub judice. In Jefferson Pennington, the defendant was arrested for DUI in Davidson County. Pursuant to a policy of the Davidson County general sessions judges and judicial commissioners, Defendant was held in custody for approximately eleven (11) hours prior to being allowed to make bail because he had refused to submit to a breath-alcohol test. Upon motion of defendant, the trial court dismissed the indictment. Our court affirmed the judgment of the trial court in an opinion where one judge concurred in results only and another judge dissented. The lead opinion in our court concluded that further prosecution would violate double jeopardy principles. The supreme court reversed, and in addressing the double jeopardy issue stated as follows:

> In context, double jeopardy violations arise only when an individual is twice placed in jeopardy for the same offense. Customarily, in jury proceedings, jeopardy attaches when the jury is

sworn, and in nonjury proceedings, jeopardy attaches when the first witness testifies [citations omitted] . . . .

It is well established that jeopardy does not attach in preliminary pretrial proceedings. <u>See</u> <u>United States ex rel. Rutz v. Levy</u>, 268 U.S. 390, 45 S. Ct. 516, 69 L. Ed. 1010 (1925); <u>Collins v. Loisel</u>, 262 U.S. 426, 43 S. Ct. 618, 67 L. Ed. 1062 (1923). Rather, to be put in jeopardy, the defendant must be "subject to 'criminal prosecution' and put to trial." <u>United States v. Grisanti</u>, 4 F.3d. 173, 175 (2nd Cir. 1993). The proceeding must be "essentially criminal" and constitute an action "intended to authorize criminal punishment to vindicate public justice." <u>Id</u>. [citations omitted].

<u>Jefferson Pennington</u>, No. 01-S-01-9607-PB-00133, slip op. At 5.

A stipulated fact in <u>Jefferson Pennington</u> was that one of the purposes of the detention policy was to keep those who are suspected of being intoxicated drivers off the road for a period of time following arrest. The supreme court concluded this was a remedial purpose, not punitive, and thus the defendant's initial appearance before the judicial commissioner was not an "essentially criminal proceeding" brought to "vindicate public justice." <u>Id</u>. at 6.

Based upon Sheriff Wall's testimony regarding the purposes of the detention, and in light of the decision in <u>State v. Jefferson Pennington</u>, we conclude that the purpose of the detention under the facts of this case was remedial, not punitive, and did not constitute an essentially criminal proceeding. As a result, the detention did not violate any double jeopardy protections afforded Defendant.

DUE PROCESS

While concluding in State v. Jefferson Pennington that there was no violation of double jeopardy protections, our supreme court still recognized that a policy of detaining suspected drunk drivers for refusing to submit to a test to determine blood-alcohol content may, if punitive, implicate certain other constitutional protections. Specifically, the court stated, "To punish an individual without a prior adjudication of guilt is a violation of due process." Jefferson Pennington, No. 01-S-01-9607-PB-00133, slip op. At 7 (citing Kennedy v. Mendoza Martinez, 372 U.S. 144, 186, 89 S. Ct. 554, 576, 9 L. Ed.2d 644 (1963)).

The court also held that pretrial detention that is remedial rather than punitive is permissible as long as the arrestee is afforded sufficient procedural due process.

In State v. Coolidge, 915 S.W.2d 820 (Tenn. Crim. App. 1995), our court quoted from Doe v. Norris, 751 S.W.2d 834, 839 (Tenn. 1988), a case involving a due process issue, as follows:

> In determining whether the confinement involved . . . is punishment . . . [c]ourts must decide whether the confinement is imposed for the purpose of punishment or whether it is an incident of a legitimate governmental purpose. Where . . . no showing of an express intent to punish is made . . . "that determination . . . turn[s] on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned."

Coolidge, 915 S.W.2d at 823.

A two-part test was set forth in <u>Coolidge</u> to determine whether pre-trial detention qualified as punishment: (1) whether the detention served an alternative purpose, and (2) whether detention is excessive in relation to the purpose. 915 S.W.2d at 824. Detention for the purpose of detoxification may qualify as a legitimate government goal. <u>Id</u>. at 823. The period of six (6) hours confinement in jail following a blood alcohol level of 0.13 (even though the result was obtained approximately seven (7) hours prior to her release) is not shown by this record to be excessive in relation to the stated purpose. Under all of the circumstances of this case, we agree with the trial court that Defendant's case does not justify the granting of her motion to dismiss.

We affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge


CONCUR:


_____
JOSEPH B. JONES, Presiding Judge


_____
WILLIAM M. BARKER, Judge