IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 10, 2018 Session

## CONOLY BROWN, ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE

Appeal from the Chancery Court for Davidson County
No. 17-239-IV       Russell T. Perkins, Chancellor

_____

### No. M2017-01207-COA-R3-CV

_____

Landowners appeal the trial court's dismissal of their petition seeking a declaratory judgment that the requirement in the Metropolitan Nashville zoning ordinance that alternative financial services providers be located 1,320 feet apart violates the due process and equal protection provisions of the state and federal constitutions. Upon our *de novo* review, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and THOMAS R. FRIERSON, II, J., joined.

Peter H. Curry, Nashville, Tennessee, for the appellants, Conoly Brown and David Anthony Hood.

Jon Cooper, Director of Law; Lora Barkenbus Fox and Catherine J. Pham, Metropolitan Attorneys, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville & Davidson Co.

### OPINION

## I.    FACTUAL AND PROCEDURAL HISTORY

This appeal involves a challenge to the constitutionality of an ordinance that prohibits "alternative financial services" from operating within a certain distance of each other. The Code of the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") defines alternative financial services as "any building, room, space or portion thereof where an establishment provides a variety of financial services outside of the operating hours of a financial institution and/or offers financial services including

but not limited to cash advance, title loans, check cashing, pawnshops, and flex loans." Metro Code § 17.04.060(B). The Code was amended in 2016 to require that businesses offering alternative financial services be located 1,320 feet apart. Metro Code § 17.16.050(D)(1). Under the Code, "financial institutions," such as banks, are defined as "any building, room, space or portion thereof where an establishment provides a variety of financial services, including generally, banks, credit unions, and mortgage companies, but excluding alternative financial services" and are "open to the public within hours that do not exceed 8:00 a.m. to 6:00 p.m. Monday – Friday, and 8:00 a.m. to 1:00 p.m. on Saturday." Metro Code § 17.04.060(D). Financial institutions are not subject to the 1,320 feet distance requirement.

Conoly Brown and David Hood own property on Lebanon Road in Nashville and sought a building permit from the Metropolitan Department of Codes Administration to rehabilitate a building located on that property. Messrs. Brown and Hood planned to open a business on the property that would provide alternative financial services such as check cashing, title loans, deferred presentment loans, and flex loans, as well as money transfers, debit cards, money orders, ATMs, tax preparation, local utility payments, bill payments, and postage. The Metropolitan Department of Codes Administration denied their application because the building location was within 1,320 feet of an existing alternative financial services provider.

Mr. Brown and Mr. Hood (collectively, "Petitioners") initiated the present action, seeking a declaratory judgment that "certain provisions of the Metropolitan Zoning Ordinance ('MZO') violate their due process and equal protection rights under the Tennessee and United States constitutions." The petition alleged that the zoning ordinances "draw an artificial, irrational and illegal distinction in land uses between businesses licensed by the state to make cash advances . . . and the making of the exact same financial transactions by mainline banks and credit unions[,] which do not require these state licenses," rendering the ordinances "void because they lack a reasonable, rational basis and are arbitrary and capricious, thereby violating the Petitioners' rights to due process and equal protection of the law." They asked the court to declare null and void those provisions that created a distinction between "alternative financial services" and "financial institution" and imposed the 1,320 feet distance limitation between alternative financial services businesses. They also requested that Metro be required to approve their zoning review and grant them a building permit.

Metro moved to dismiss the petition, pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure, on the basis that the challenged provisions are rationally related to a legitimate government purpose and therefore, the petition failed to state a claim for a violation of substantive due process or equal protection. With its motion, Metro filed certified copies of Title 17 of the Metro Code and the ordinance that amended Title 17 to provide for the 1,320 feet distance requirement.

2

The trial court granted Metro's motion. With respect to the Petitioners' due process claim, the court held:

> The record before the Court demonstrates that the distance requirement is rationally related to protecting property values and economic redevelopment, which is a legitimate state objective. By preventing geographic market saturation, the distance requirement helps preserve the economic health and stability of the surrounding property values and its people, who, as a result of the high fees associated with using alternative financial services, can become enmeshed in a cycle of debt and dependency. As stated previously, when the means chosen bear a rational relationship to a legitimate state objective and those means are not arbitrary, capricious, or unreasonable, courts will uphold the legislative enactment. *See Williamson v. Lee Optical*, 348 U.S. 483, 487-88 (1955). This is true even if the means chosen by the legislative body are not precise or the best way to achieve the state objective. *See id.* The only question is whether the enactment is rationally related to the public health, safety or welfare, which the Court finds that it is.

With respect to the Petitioners' equal protection claim, the court held:

> In essence, Petitioners allege that the Metro Code provisions regarding alternative financial services businesses improperly differentiate between alternative financial services businesses and financial institution businesses. As stated previously, the Court finds that the subject Metro Code provisions do not implicate any suspect or quasi-suspect classification or any fundamental right. Further, the Court finds that Petitioners do not meet the threshold for an equal protection challenge, because alternative financial services business are not similarly situated to financial institutions in that the broad range of services provided by banks and savings and loan associations distinguishes them from alternative financial services businesses. Moreover, financial institutions are reasonably subject to entirely different requirements and regulations.

> "All zoning plans have inherent within them a discrimination between the various land uses permitted thereunder." *Studen v. Beebe*, 588 F.2d 560, 565 (6th Cir. 1978). However, the Court finds that the classification to which Petitioners have been subjected does not amount to a denial of equal protection.

The Petitioners appeal, raising the following issues for our review, which we restate slightly:

3

1.  Whether the court's ruling on the motion to dismiss was improperly based upon matters outside the pleadings.

2.  Whether the petition stated claims for relief, such that dismissal was improper.

## II.    STANDARD OF REVIEW

The standard to be applied in ruling upon, and in reviewing, a motion to dismiss was set out in *Phillips v. Montgomery County*:

> A motion to dismiss based upon Tennessee Rule of Civil Procedure 12.02(6) requires a court to determine if the pleadings state a claim upon which relief may be granted. Tenn. R. Civ. P. 12.02(6); *Cullum v. McCool*, 432 S.W.3d 829, 832 (Tenn. 2013). A Rule 12.02(6) motion challenges "only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). A defendant filing a motion to dismiss "admits the truth of all the relevant and material allegations contained in the complaint, but ... asserts that the allegations fail to establish a cause of action." *Id.* (quoting *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)) (alteration in original) (internal quotation marks omitted). The resolution of such a motion is determined by examining the pleadings alone. *Id.*
>
> In adjudicating such motions, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Id.* (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31–32 (Tenn. 2007)); *Cullum*, 432 S.W.3d at 832. A motion to dismiss should be granted only if it appears that "'the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Webb*, 346 S.W.3d at 426 (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). Tennessee jurisprudence on this issue "reflects the principle that this stage of the proceedings is particularly ill-suited for an evaluation of the likelihood of success on the merits...." *Cullum*, 432 S.W.3d at 832 (quoting *Webb*, 346 S.W.3d at 437). We review a lower court's decision on such a motion de novo without any presumption of correctness. *Id.*

442 S.W.3d 233, 237 (Tenn. 2014).

4

**III. DISCUSSION**

**A. The Trial Court's Consideration of the Zoning Ordinance and Metro Code Title 17**

In its decision, the trial court made reference to relevant portions of the zoning ordinance for the Metropolitan Government, contained at Title 17 of the Metropolitan Code, and the ordinance amending Code section 17.16.050, which imposes the 1,320 feet distance requirement between businesses offering alternative financial services. In the preamble, the ordinance contains thirteen "whereas" statements of reasons the ordinance was adopted, including that the "proliferation and clustering of 'Alternative Financial Services' . . . can have a detrimental effect on local property values and economic redevelopment." The preamble also references, *inter alia*, a study performed by the Regional Planning Agency of Chattanooga-Hamilton County, an article in the Texas Business Review, as well as actions taken by the cities of Chattanooga and Memphis. Petitioners argue that the trial court's consideration of the preamble to the zoning ordinance was inappropriate because "the ordinance was not referenced in the Petition" and the trial court improperly made "determinative findings of fact based upon hearsay contained in the preambles of the ordinances." These arguments are without merit.

The pertinent allegations of the petition alleged:

4. On December 26, 2017, the Petitioners made application to the Metropolitan Department of Codes Administration (the "Department") for a building permit to rehab the building for use as a business providing alternative financial services. The Department denied the permit based on Section 17.16.050(D) of the Metropolitan Zoning Ordinance ("MZO") which required a minimum distance of 1320 feet between businesses providing alternative financial services. Section 17.04.060 defines alternative financial services as follows:

> **'Alternative financial services'** means any building, room, space or portion thereof where an establishment provides a variety of financial services outside of the operating hours of a financial institution and/or offers financial services including but not limited to cash advance, title loans, check cashing, pawnshops and flex loans.

These four identified land uses are defined in Section 17.04.060 of the MZO as follows:

> **'Cash advance'** means any building, room, space or portion thereof where unsecured, short-term cash advances are

5

provided, including those made against future paychecks, as regulated by Title 45. Chapter 17 of the Tennessee Code Annotated.

(Section 45-17-102 defines deferred presentment loans as a transaction for a fee pursuant to a written agreement that involves the acceptance of a check and the holding of the same for a period of time before presentment for payment.)

'Check cashing' means any building, room, space or portion thereof, where checks are cashed for a fee, as regulated by Title 45, Chapter 18 of the Tennessee Code Annotated.

'Title loan' means any building, room, space or portion thereof where a business operates that makes loans in exchange for possession of the certificate to property or a security interest in titled property, as regulated by Title 45, Chapter 15 of the Tennessee Code Annotated.

'Flex loan' means any building, room, space or portion thereof where a written agreement providing open-end credit, either unsecured or secured by personal property, in which repeated non-commercial loans for personal, family or household purposes is contemplated, as regulated by Title 45, Chapter 12 of the Tennessee Code Annotated.

TCA Section 45-12-102 defines a flex loan as a loan made pursuant to a "flex loan plan" and defines such a plan as:

" ... a written agreement subject to this chapter between a licensee and a customer establishing an open-end credit plan under which the licensee contemplates repealed noncommercial loans for personal, family, or household purposes that:

(A) May be unsecured or secured by personal property: (B) May be without fixed maturities or limitation as to the length of term: and (C) Are subject to

6

prepayment in Whole or in part at any
time without penalty."

Section 17.04.060 defines financial institution land use as follows:

> **'Financial institution'** means any building, room, space or
> portion thereof where an establishment provides a variety of
> financial services, including generally, banks, credit unions,
> and mortgage companies, but excluding alternative financial
> services. A financial institution is open to the public within
> hours that do not exceed 8:00 a.m. to 6:00 p.m. Monday –
> Friday, and 8:00 a.m. to 1:00 p.m. on Saturday.

Section 17.04.060 defines use as follows:

> **'use'** means a function or operation that constitutes an
> activity occurring on the land.

5. The effect of these definitions is to place a minimum distance limitation
of 1320 feet between cash advance, check cashing, title loan and flex loan
land uses, but only for those financial businesses requiring the specified
licenses from the state to provide these services. Those financial businesses
providing the exact same services, and performing the exact same activity
on the land, but do not require a separate state license, such as banks and
credit unions, are not subjected to this minimum distance limitation.

6. The procedure for obtaining a building permit begins with filing an
application with the Department of Codes Administration, as did the
Petitioners. The first step taken in the process is "Zoning Review" which is
performed to determine if the applicants proposed land use is in compliance
with the MZO land use provisions. The Petitioners filed their application,
stating that they intended to provide a variety of financial services,
including check cashing, payday loans, cash advance, flex loans, money
orders, money transfers, bill payments, debit cards, utility payments, tax
preparations and postage. The application was denied on the grounds that
the proposed use was not permitted in the CL zoning district because its
location was within 1320 feet of property upon which there was an existing
alternate financial services use activity. If it had been a bank or credit
union applying for the permit it would have been approved as an allowable
use within the CL zoning district. These provisions of the MZO draw an
artificial, irrational and illegal distinction in land uses between businesses
licensed by the state to make cash advances; to cash checks; to make auto
loans; to make flex loans; and the making of the exact same financial

7

transactions by mainline banks and credit unions which do not require these State licenses. These state licensed "alternative financial services - businesses primarily serve the "unbanked" or less credit worthy citizens of Nashville. As a matter of law, there is no rational basis for this distinction and therefore those provisions of the MZO creating the artificial definitional distinction and placing a discriminatory distance limitation on alternative financial services business are void because they lack any reasonable, rational basis and are arbitrary and capricious, thereby violating the Petitioners' rights to due process and equal protection of the law.

7. It is clear from the statutory scheme created by Metro that what it objects to is high interest loans and a concentration of the "unbanked" lower financial class of citizens. The Metropolitan Government, however, is not empowered to regulate interest rates; nor is it empowered to illegally distinguish between identical business activities on the basis of the interest rate or the socio-economic standing of the business' customers.

The parties agree that the resolution of both constitutional issues—due process and equal protection—requires a determination of whether Metro had a rational basis for enacting the ordinance; under the rational basis test, when "any reasonable justification for the law may be conceived, it must be upheld by the courts." *Riggs v. Burson*, 941 S.W.2d 44, 48 (Tenn. 1997).

As is apparent from the foregoing, Petitioners set forth in detail the factual and legal basis of their constitutional arguments in their petition. Considered in the context of resolving the motion to dismiss, the trial court's consideration of the preamble to the ordinance did not raise matters of law or fact that were outside the pleadings; rather, the preamble set forth the basis upon which the ordinance was passed. *See Cherokee Country Club, Inc. v. City of Knoxville,* 152 S.W.3d 466, 478 (Tenn. 2004); *Riggs*, 941 S.W.2d at 47.[1] We conclude that no error was committed by the trial court in considering the preamble in determining whether Metro had a rational basis for adopting the ordinance.

---

[1] In *Riggs v. Burson*, our Supreme Court upheld the trial court's consideration of the preamble to the statute at issue in the case, as well as the statute, in holding that the statute did not violate the due process and equal protections provisions of the Tennessee or United States Constitutions and in granting a motion to dismiss the action. 941 S.W.2d 44, 47-48 (Tenn. 1997); *see also Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 478 (Tenn. 2004) ("In our view, copies of the emergency ordinance under consideration and the related city charter and code provisions did not raise matters of law or fact that were 'outside the pleadings. Tenn. R. Civ. P. 12.03'"); *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (observing that "Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies"), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).

8

**B. Due Process**

Tennessee's Constitution provides "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Tenn. Const. Art. I, sec. 8. Our Supreme Court stated in *Riggs* that:

> This Court has held that the "law of the land" provision of article I, section 8 of the Tennessee Constitution "is synonymous with the due process clause of the Fourteenth Amendment to the United States Constitution." *Newton v. Cox,* 878 S.W.2d [105] at 110 [(Tenn. 1994)]; *State ex rel. Anglin v. Mitchell,* 596 S.W.2d 779, 786 (Tenn.1980). Thus, unless a fundamental right is implicated, a statute comports with substantive due process if it bears "a reasonable relation to a proper legislative purpose" and is "neither arbitrary nor discriminatory." *Newton v. Cox,* 878 S.W.2d at 110.

941 S.W.2d at 51.

In our analysis, we address whether the distance requirement is reasonably related to a legitimate legislative purpose. Stated somewhat differently, "[a] zoning ordinance is the product of legislative action and, before it can be declared unconstitutional, a court must find that the provisions are clearly arbitrary and unreasonable, having no substantial relationship to the public health, safety, morals or general welfare." *Consol. Waste Sys., LLC v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2002-02582-COA-R3-CV, 2005 WL 1541860, at *5 (Tenn. Ct. App. June 30, 2005) (citing *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395 (1926)). Courts do not "inquire into the motives of a legislative body or scrutinize the wisdom of a challenged statute or ordinance." *Martin v. Beer Bd. for City of Dickson,* 908 S.W.2d 941, 955 (Tenn. Ct. App. 1995) (citations omitted).

The Petitioners concede that "concerns about property values and economic redevelopment are valid concerns and a proper state interest for consideration in enacting zoning regulations"; they argue that the distance requirement "is not reasonably related to advancing" that interest. The preamble to the ordinance includes concerns related to the detrimental effect of clustering alternative financial services on property values; the location of the businesses in areas that are disproportionately minority and low income; the permissive regulatory environment, which allows the businesses to charge an annual interest rate of up to 459 percent; and new regulations, effective January 1, 2015, that regulate three new types of alternative financial lenders. Taken in their entirety, the statements in the preamble reflect legitimate legislative purposes, specifically, protecting the welfare of economically vulnerable citizens. The Metropolitan Council chose to restrict the location of alternative financial service providers in order to regulate the

9

proliferation and clustering of these services; this decision reasonably advances the governmental interests identified in the preamble to the ordinance. Accordingly, we affirm the dismissal of the Petitioners' due process claim.

## C. Equal Protection

Petitioners argue that alternative financial services businesses and financial institutions are similarly situated because they provide substantially the same services; they contend that the 1,320 feet distance requirement "impos[es] a distance requirement on one and not the other," thereby violating the guarantee of equal protection by "draw[ing] an artificial, irrational, and illegal distinction in land uses."

"The concept of equal protection espoused by the federal and of our state constitutions guarantees that 'all persons similarly circumstanced shall be treated alike.'" *Doe v. Norris*, 751 S.W.2d 834, 841 (Tenn. 1988) (quoting *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415 (1920)). "Things which are different in fact or opinion are not required by either Constitution to be treated the same." *Riggs*, 941 S.W.2d at 52 (citing *Tennessee Small School Sys.v. McWherter,* 851 S.W.2d 139, 153(Tenn. 1993)). In that regard:

> The initial discretion to determine what is "different" and what is "the same" resides in the legislatures of the States, and legislatures are given considerable latitude in determining what groups are different and what groups are the same.... In most instances the judicial inquiry into the legislative choice is limited to whether the classifications have a reasonable relationship to a legitimate state interest....

*Tennessee Small School Sys.*, 851 S.W.2d at 153 (citations omitted). When a legislative act does not interfere with the exercise of a fundamental right or disadvantage a suspect class, the rational basis test provides the appropriate standard for determining whether the statute should be upheld on equal protection grounds. *Newton v. Cox,* 878 S.W.2d 105, 109-10 (Tenn. 1994) (citations omitted). Under this standard, the classification must simply "rest upon a reasonable basis . . . it is not unconstitutional merely because it results in some inequality." *Harrison v. Schrader,* 569 S.W.2d 822, 825 (Tenn. 1978). "[I]f any state of facts can reasonably be conceived to justify the classification or if the reasonableness of the class is fairly debatable, the statute must be upheld." *Id.* at 826.

Petitioners argue that the trial court erred by not accepting as true their allegation that alternative financial services provide "the exact same services and perform the exact same activities on the land" as financial institutions. In ruling on a motion to dismiss, the court was not required to assume that the petition's conclusory allegation that the use is the "same" is true. *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006) (holding that "[a]lthough we are required to construe the factual allegations in

Plaintiff['s] favor, and therefore accept the allegations of fact as true, we are not required to give the same deference to conclusory allegations.") (citing *Riggs* 941 S.W.2d at 48).[2] The relevant consideration is whether a "reasonably conceivable set of facts [exist] to justify the classification within the [ordinance]." *Riggs*, 941 S.W.2d at 53.

To that end, the ordinance's preamble identifies specific characteristics of alternative financial services businesses, e.g., high fees associated with using alternative financial services, permissive regulations enabling such establishments to charge high interest rates, and the proliferation of alternative financial services businesses, that distinguishes them from financial institutions. The ordinance therefore sets forth facts that explain the reason the 1,320 feet distance requirement was imposed on alternative financial services businesses; these facts are reasonably related to the classification and provide a reasonable basis for the difference in treatment of the two types of business. Accordingly, we affirm the dismissal of the equal protection claim.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment dismissing the petition.

_____
RICHARD H. DINKINS, JUDGE

---

[2] Moreover, the allegation that the services provided by both businesses are the same is belied by other allegations. The petition also cites to Metro Code section 17.04.060, which defines "alternative financial services," as well as the "cash advance," "check cashing," "title loan," and "flex loan," services they provide; alleges that the alternative financial services have no hours of operation imposed on them as do financial institutions; and that the alternative financial services businesses are subject to different state licensing requirements than financial institutions.