**STATE of Tennessee, Appellee,**

v.

**Cynthia K. RUSSELL, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 6, 1991.

Permission to Appeal Denied by Supreme Court May 11, 1992.

John E. Herbison and Rebecca Freeman, Nashville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Jeannie Kaess, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., and James C. Beasley, Jr., Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

PEAY, Judge.

The petitioner was convicted on five counts of forgery and subsequently found to be a habitual criminal, for which she received a life sentence. In determining her to be a habitual criminal, the jury considered evidence of her prior twenty-four convictions.

On June 30, 1989, the petitioner filed three petitions for post-conviction relief challenging the guilty pleas entered on September 12, 1977, March 14, 1978, and March 3, 1983. She also filed a fourth post-conviction petition on the same date challenging the habitual criminal judgment. These petitions were consolidated, and all were dismissed following an evidentiary hearing.

The petitioner has presented four issues for review in this appeal. In her first issue she alleges that the trial court erred in concluding that the application of the habitual criminal statute to her does not violate the equal protection provision of Article I, § 8 of the Tennessee Constitution. In her second issue she contends that the trial court improperly determined that the sentence imposed under the Habitual Criminal Act does not constitute cruel and unusual punishment according to the Eighth Amendment to the United States Constitution or Article I, § 16 of the Tennessee Constitution. In the third issue she contends that the trial court erred by finding her 1977 and 1983 guilty pleas represented knowing, intelligent and voluntary waivers of her constitutional rights. Lastly, she claims that the trial court erred in concluding that she was afforded effective assistance of counsel. After reviewing the record, we find these issues to be without merit and, therefore, affirm the lower court's findings.

■ As noted above, the petitioner contends that the habitual criminal statute, as applied in this case, deprives her of the equal protection of the law provided for by the Fourteenth Amendment of the United States Constitution and Article I, § 8 of the Tennessee Constitution. She bases this challenge on the legislature's failure to include among the triggering offenses several Class X felonies and other serious crimes. In addition,

she believes that the statute is further under-inclusive with regard to triggering offenses, as forgery is enumerated while passing forged paper is not.

Her pillars of support for this argument are *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), and *Doe v. Norris*, 751 S.W.2d 834 (Tenn.1988). In *Skinner* the United States Supreme Court determined that the Oklahoma Habitual Criminal Sterilization Act was unconstitutional. This act included grand larceny as a triggering offense but not the intrinsically similar crime of embezzlement of over twenty dollars. Finding sterilization impacted a fundamental right, the court applied the strict scrutiny test. It then concluded that "Oklahoma makes no attempt to say that he who commits larceny by trespass or trick or fraud has biologically inheritable traits which he who commits embezzlement lacks"; thus, the statute failed to comply with equal protection. *Skinner*, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113.

The petitioner attempts to link this rationale with the Tennessee Supreme Court's holding in *Doe* that the right to personal liberty is a fundamental right. *Doe*, 751 S.W.2d 834, 841. *Doe* involved the commingling of "unruly" juveniles with "delinquents". While delinquent children were those who had been found guilty of an act which would constitute a crime if committed by an adult, such was not the case for unruly children (also called status offenders). The acts rendering a child unruly were proscribed by the legislature only for those below a certain age. *Doe*, 751 S.W.2d 834, 836. After reviewing the testimony of expert witnesses and professionals, the Court agreed that "the State's practice of placing the [unruly children] in secure penal facilities and commingling them with delinquent offenders is not … a practice 'precisely tailored' to serve [a] compelling [governmental] interest" as it does not protect these children from harm. *Doe*, 751 S.W.2d 834, 842.

While we agree that the loss of liberty involves a fundamental right requiring strict scrutiny analysis, we believe such is inapplicable here. The petitioner in this case was not an unruly child whom the State was seeking to protect. Her conduct as an adult had resulted in the need to incarcerate her to protect society. She does not contest the fact that the State may rightfully deprive her of her liberty, asserting only that the length of that deprivation is improper.

Although we were able to find no case precisely on point from this jurisdiction, *United States v. Brookins*, 383 F.Supp. 1212 (D.N.J.1974), *aff'd*, 524 F.2d 1404 (3d Cir. 1975), dealt with differing lengths of punishment for similar offenses and found the rational basis test to be appropriate. We agree.[1]

■ Because we find that the standard applicable to our habitual criminal statute has not been changed from a rational basis to strict scrutiny analysis, we may, therefore, rely on previous case law upholding the constitutionality of this statute. In *Glasscock v. State*, 570 S.W.2d 354, 355 (Tenn.Crim.App. 1978), this Court held that the statute did not violate equal protection. *Cf. State v. Yarbro*, 618 S.W.2d 521, 525 (Tenn.Crim.App.1981).

The purpose of the habitual criminal statute "is to permanently remove from society individuals who have proven themselves to be a public menace". *Rhea v. Edwards*, 136 F.Supp. 671, 682 (M.D.Tenn.1955), *aff'd*, 238 F.2d 850 (6th Cir.1956). See *McCummings v. State*, 175 Tenn. 309, 134 S.W.2d 151, 152 (Tenn.1939). Incarceration may very well be the most effective method of insuring that society is protected from individuals who have demonstrated a lifelong commitment to societal injury. Having in excess of twenty convictions, the petitioner's history seems to further support the propriety of this measure.

---

1. Having distinguished *Doe*, there is no need to discuss *Skinner* any further. However, for clarity's sake we add that sterilization at the time of *Skinner* forever impinged on an individual's fundamental right to procreation. The interference with the right was possible by law only through the Oklahoma Habitual Criminal Sterilization Act. In the case before this court, the petitioner's conviction for the violation of the triggering offense of forgery would be punishable by her loss of liberty even if there had been no habitual criminal statute in Tennessee.

■ In post-conviction proceedings the petitioner has the burden of proving the allegations in his or her petition by a preponderance of the evidence. *McBee v. State,* 655 S.W.2d 191, 195 (Tenn.Crim.App.1983). In addition, the factual findings of the trial court in post-conviction hearings "are conclusive on appeal unless the evidence preponderates against the judgment". *State v. Buford,* 666 S.W.2d 473, 475 (Tenn.Crim.App.1983). The trial court concluded that the habitual criminal statute as applied to the petitioner did not violate her right of equal protection, and we do not find that the evidence preponderates against the trial court's judgment; thus, this issue is without merit.

■ In her second constitutional challenge the petitioner contends that the trial court erred in finding that the imposition of a life sentence under the habitual criminal statute did not constitute cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and Article I, § 16 of the Tennessee Constitution. As on direct appeal her sentence was held not to have constituted cruel and unusual punishment, *State v. Cynthia Fulford Russell,* No. 30, Shelby County, 1987 WL 6068 (Tenn. Crim.App. filed February 4, 1987, at Jackson), the petitioner correctly attempts to bring this issue under T.C.A. § 40–30–105.[2] She then attempts to support her claim by pointing to the Revised Criminal Code of 1989, which repealed the habitual criminal classification. She believes this to be evidence that according to current societal standards of decency, her 1986 life sentence is constitutionally disproportionate.

In attempting to guide this Court toward the proper method of analyzing this issue, the petitioner states that when examining "evolving standards of decency that mark the progress of a maturing society", *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958), the objective indicia to which we must first look are legislative acts. *See Stanford v. Kentucky,* 492 U.S. 361, 369, 109 S.Ct. 2969, 2975, 106 L.Ed.2d 306 (1989). The Sentencing Reform Act clearly states

that it applies only to persons sentenced after November 1, 1989, for an offense committed after July 1, 1982. T.C.A. § 40–35–117. Thus, these sentencing guidelines would not apply to the petitioner since her sentence was imposed on February 13, 1986. However, these guidelines as outlined in T.C.A. §§ 40–35–102 and –103 reflect a continuing legislative intent to incarcerate those with lengthy criminal records. In particular, T.C.A. § 40–35–102(5) seems relevant as it states:

> In recognition that state prison capacities and the funds to maintain them are limited, convicted felons committing the most severe offenses, *possessing criminal histories evincing a clear disregard for the laws and morals of society,* and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration (emphasis added).

The petitioner's convictions for in excess of twenty similar offenses reflect her "clear disregard for the laws and morals of society".

In addition, the act which repealed the habitual criminal statute contains the following language: "[t]his act shall not affect rights and duties that matured, penalties that were incurred, or proceedings that were begun before its effective date". 1989 Tenn. Pub. Acts ch. 591, § 115. Such language does not support the petitioner's theory of a legislature reflecting the views of a penitent society realizing its former cruelty.

We would also note that under seemingly innumerable previous challenges, the courts of this state have held that the habitual criminal statute does not violate the constitutional protection against cruel and unusual punishment. *See Pearson v. State,* 521 S.W.2d 225, 229 (Tenn.1975); *State v. Kilby,* 763 S.W.2d 389, 393–94 (Tenn.Crim.App. 1988); *Mullins v. State,* 571 S.W.2d 852, 857–58 (Tenn.Crim.App.1978), *cert. denied,* 440 U.S. 963, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979); *Janow v. State,* 567 S.W.2d 483, 485 (Tenn.Crim.App.1978); *Frazier v. State,* 480 S.W.2d 553, 554 (Tenn.Crim.App.1972). The

**2.** This statute authorizes post-conviction relief for the abridgment of a right not recognized as existing at the time of trial.

more recent case of *Thomas Nelson and Jerry Nelson v. State*, No. 267, Washington County, 1990 WL 149226 (Tenn.Crim.App. filed October 9, 1990, at Knoxville) provided that the fact that "a penalty is reduced by new legislation does not mean the sentence under the old law was disproportionate".

Following this review, we do not find that the evidence preponderates against the trial court's rejection of this issue. *See McBee*, 655 S.W.2d 191, 195.

■ In her third issue, the petitioner contends that the convictions arising from her 1977 and 1983 guilty pleas were not knowingly, intelligently and voluntarily made because she was under the influence of a Schedule II drug at the time they were entered. She further claims that her consumption of these narcotics rendered her incapable of waiving her constitutional rights as guaranteed by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and *State v. Mackey*, 553 S.W.2d 337 (Tenn.1977). Citing *Sanders v. United States*, 373 U.S. 1, 19–20, 83 S.Ct. 1068, 1979–80, 10 L.Ed.2d 148 (1963), she claims that the United States Supreme Court has held that a guilty plea entered while a defendant is under the influence of narcotics is a proper issue for federal habeas corpus relief. Although this is true, the trial court in this case correctly noted the following:

> The Supreme Court in *Sanders* did not say the petitioner was entitled to habeas corpus relief based on his allegations of incompetence. All that case decided was that when the allegations do not appear in the record, the petitioner is entitled to a hearing on the matter.

The petitioner in this case had such a hearing at which she offered the testimony of Dr. L.D. Hutt, a clinical psychologist, to support her argument. Dr. Hutt stated that the amount of narcotics which the petitioner claimed to have ingested would be an unusually high dosage. Furthermore, he testified that "the ingestion of that type of drug would impair the person's higher mental faculties". However, during cross-examination he conceded that the effect of the drug would depend upon the user's tolerance.

In actuality, the petitioner's testimony was the only source of information before the court concerning whether or not she had introduced any narcotics into her system prior to entering her guilty pleas. She, therefore, was also the sole source of the amounts alleged to have been taken. While she claimed to recall the exact dosages which she had administered to herself intravenously, she could not even recall where this had been done. In contrast, the record indicates that in both instances the petitioner responded clearly and distinctly to detailed questions asked by the court.

As noted earlier, the petitioner has the burden of proving her allegations by a preponderance of the evidence. *McBee*, 655 S.W.2d 191, 195. The trial court determined that the petitioner had failed to sustain her burden of proof as to whether she had been incapable of voluntarily and knowingly waiving her constitutional rights at the time she pled guilty in 1977 and 1983. There was little corroborating evidence to support the petitioner's contentions; thus, we are unable to find that the evidence preponderates against the lower court's decision.

In her final issue the petitioner complains that the trial court erred by finding that she had not been denied the effective assistance of counsel at either her 1978 guilty pleas or her 1986 jury trial. With regard to the 1978 pleas, the petitioner testified that on the day in question she had believed that she was to appear in court on a suspended sentence petition; however, upon arrival she had been informed of several new charges which were being brought against her. She alleges that her counsel did not discuss any possible defenses with her prior to advising her to plead guilty to eight separate charges. Furthermore, she contends that this advice was given without her counsel's having conducted any investigation concerning her case. As to the 1986 convictions, the petitioner contends that counsel should have collaterally attacked her prior guilty pleas.

■ In determining whether or not a criminal defendant has been afforded his or her Sixth Amendment right to the effective assistance of counsel, the standard test is whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in crimi-

nal cases. *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn.1975). To prevail on this type of claim, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that this performance prejudiced the defense. There must be a reasonable probability that but for counsel's error the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 693–94, 104 S.Ct. 2052, 2067–68, 80 L.Ed.2d 674 (1984).

While the petitioner asserts that she was prejudiced at her 1978 guilty pleas by her attorney's lack of preparation, noticeably absent is any showing with respect to the second prong of the *Strickland* standard. The record reveals no evidence that the outcome would have been different but for counsel's error.

■ As to the 1986 convictions, the trial court issued its findings explaining its reason for denying relief:

> ... there is also no merit in [the] petitioner's claim that she was denied effective assistance of counsel because her attorney made no collateral attack on the prior convictions. ... the record indicates that her attorney did everything possible under the circumstances, considering the proof that the state had against the petitioner. With regard to what counsel should or should not have done about the prior convictions, [the] petitioner's own testimony revealed that she never complained about her prior convictions, or told her attorney in 1986 that she was under the influence of drugs at the time she pled guilty.

Once again we are unable to find that the evidence preponderates against the lower court's decision. *See McBee,* 655 S.W.2d 191, 195.

For the reasons stated above, the judgment of the trial court denying post-conviction relief is affirmed.[3]

JONES and BIRCH, JJ., concur.

---

3. Although unsuccessful, we commend defense counsel on their outstanding briefing of the is-

sues in this case.