IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JUNE 1999 SESSION

FILED

September 24, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. No. 01C01-9807-CR-00291 |
| Appellee, | ) | |
| | ) | Davidson County |
| v. | ) | |
| | ) | Honorable J. Randall Wyatt, Jr., Judge |
| FRANK CHESTER BRIGHT, JR., | ) | |
| a/k/a MERVYN JORDAN, | ) | (Possession with Intent to Deliver Cocaine; |
| | ) | Facilitation of Possession of a Deadly Weapon) |
| Appellant. | ) | |

FOR THE APPELLANT:

STEVEN M. WELLS
222 Second Avenue North
Suite 360M
Nashville, TN  37201

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General & Reporter

LUCIAN D. GEISE
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243-0493

VICTOR S. JOHNSON, III
District Attorney General

JOHN C. ZIMMERMAN
Assistant District Attorney General
222 Second Avenue North, Suite 500
Nashville, TN  37201-1649

OPINION FILED: _____

AFFIRMED

ALAN E. GLENN, JUDGE

**O P I N I O N**

The defendant, Frank Chester Bright, Jr., appeals as of right from his conviction by a jury in the Davidson County Criminal Court of possession with intent to deliver over twenty-six grams of a substance containing cocaine, a Schedule II controlled substance, which is a Class B felony, and of facilitation of possession of a deadly weapon with intent to employ in the commission of or escape from an offense of possession with intent to deliver over twenty-six grams of a substance containing cocaine, which is a Class A misdemeanor. He was sentenced as a career offender to thirty years on the possession count and eleven months and twenty-nine days on the facilitation count, the sentences to run concurrently. He has appealed on the following claims of error:

> I. Whether the trial court committed error in answering a question from the jury regarding the meanings of "facilitation" and "possession;"
>
> II. Whether the trial court erred in admitting evidence of an alias used by the defendant;
>
> III. Whether the verdict was supported by the weight of the evidence; and
>
> IV. Whether the sentence imposed was appropriate.

Based upon our review of the record related to each of these four alleged errors, we affirm the judgment of the trial court.

**PROCEDURAL BACKGROUND**

Frank Chester Bright, Jr. was indicted on March 18, 1997, along with two co-defendants, Shawntava Secimont Shields and Lisa Dianne Rice, on the following: Count I charged possession with intent to deliver twenty-six grams or more of a substance containing cocaine, and Count II charged possession of a deadly weapon, a pistol, with the intent to employ in the commission of or escape from an offense. Rice pleaded guilty to Count I, with Count II being dismissed as to her. Bright and Shields proceeded to trial. A mistrial was declared after the jury was unable to reach a verdict. Before the second trial, Shields pleaded guilty to the reduced charge of possession with intent to deliver .5 grams of a substance containing cocaine. The defendant was tried a second time. He was

2

convicted of possession with intent to deliver over twenty-six grams of a substance containing cocaine and with facilitation of possession of a deadly weapon, a pistol, with intent to employ in the commission of, or escape from, an offense. At the sentencing hearing, the court found him to be a career offender and sentenced him to the maximum penalty of thirty years on Count I and to eleven months and twenty-nine days on Count II, the sentences to run concurrently. Additionally, the court imposed a fine of $10,000.

## STATEMENT OF FACTS

The arrests of the defendant, Shawntava Shields, and Lisa Rice on October 1, 1996, were the result of an undercover operation carried out by Sergeant Greg Bunch of the Eighteenth Judicial District Task Force. In September 1996, Rice was in jail on an aggravated burglary charge. While in jail, Rice agreed to arrange a purchase of five ounces of cocaine for another female inmate whom she knew as Teresa. The plan was for Rice to arrange the sale through her supplier, once she was released from jail, and deliver the cocaine to Teresa's boyfriend, Chris. On October 1, 1996, Rice was released on Community Corrections,[1] and that same day she was contacted by telephone by the person she thought was Chris. In fact, Sergeant Bunch had been informed by a confidential informant of the proposed sale, and it was Bunch, posing as "Chris," who made this and subsequent calls to Rice to arrange the drug sale. "Chris" promised to pay Rice $1,000 for setting up the deal. Rice paged the defendant to set up the sale. Her home phone number was entered in the beeper recovered from the defendant at the crime scene. Arrangements were made for the sale of five ounces of cocaine for $5,000. The defendant promised Rice an "eight-ball" of cocaine for making the contact.[2] Once a location for the sale was established, Shields, the defendant's "sometimes" girlfriend, drove a Nissan Maxima to the agreed location, with the defendant in the front passenger seat and Rice in the back seat. On the way to the location, the defendant showed Rice five bags of cocaine and a gun, which he threatened to use if the deal turned out to be a setup.

---

[1]Ms. Rice described this program as "real strict probation" requiring that she be in by 7:00 p.m.; have drug tests every other week; complete sixteen hours of community service each month; go to meetings twice a week; and work forty hours a week.

[2]An "eight-ball" is approximately 3.5 grams of cocaine, which is a typical amount for personal use.

The defendant, Shields, and Rice arrived at the agreed location shortly after Sergeant Bunch and parked close to his car. Rice got out of the back seat and approached Sergeant Bunch, who sent her back to the Maxima for the drugs before he was willing to hand over the money. Once she returned with the cocaine and handed it to Sergeant Bunch, other undercover police officers, who had been monitoring the situation from close by in three separate vehicles, moved in, with strobe lights and sirens activated, to block the Maxima. As these police vehicles blocked that of the suspects, Shields, who was operating the suspects' vehicle, rammed the vehicles in both her front and rear. The defendant then jumped from the passenger seat into Shields's lap and began operating the gear lever himself, ramming the police vehicles blocking his own. However, the defendant was unsuccessful in extricating the vehicle, and he and Shields were arrested. The pistol, found on the passenger seat where the defendant had been sitting, was fully loaded. Recovered were two bags of cocaine, one weighing 14.2 grams and the other weighing 9.4 grams, on the driver's seat of the Maxima; a bag of 2.7 grams of cocaine and a bag of 2.6 grams of marijuana on the defendant's person; and on Shields's person, twenty-one small bags of marijuana with a total weight of 19.2 grams and a marijuana joint laced with cocaine base.

Other evidence from the scene included the bag of cocaine Rice had given to Sergeant Bunch, which weighed 5.1 grams, and the defendant's wallet, containing a driver's license in the name of "Mervyn Leo Jordan," the person the defendant claimed to be when he was arrested.

## ANALYSIS

### I. Response to Juror Question

The defendant challenges his conviction first on the ground that the trial court erred in answering a question from the jury concerning the meanings of "facilitation" and "possession" as used in the jury instructions. He does not challenge the sufficiency of the instructions read by the court prior to jury deliberations but only the court's oral response

4

to a specific question regarding those instructions presented by the jury during deliberations. That question was: "What is the difference between, one, facilitation of possession and, two, possession? Please give an example." The defendant argues that by telling the jury that "facilitation" was "something a little less than the offense itself," the court misled the jury as to the applicable law and thereby caused substantial prejudice to the defendant. The defendant notes that a "charge should be considered prejudicially erroneous if it fails to fairly submit the legal issues or it if misleads the jury as to the applicable law," State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997), and he argues that the supplemental instruction had this effect. Specifically, the defendant argues that the jury was misled by the supplemental instruction given by the court because, had the jury properly understood the distinction between the commission of a felony and the facilitation of the commission of a felony, the defendant would have received a lesser sentence.

The law regarding the offense of criminal responsibility for facilitation of a felony is stated in Tennessee Code Annotated § 39-11-403, which provides as follows:

> (a) A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony.
>
> (b) The facilitation of the commission of a felony is an offense of the class next below the felony facilitated by the person so charged.

The Sentencing Commission Comments for this section state that:

> A defendant charged as a party may be found guilty of facilitation as a lesser included offense if the defendant's degree of complicity is insufficient to warrant conviction as a party. The lesser punishment is appropriate because the offender, though facilitating the offense, lacked the intent to promote, assist or benefit from the offense.

The record shows, and both parties agree, that the court correctly instructed the jury on criminal responsibility for facilitation of a felony.[3] The trial court's instructions to the jury

---

[3]A jury is presumed to follow the trial court's instructions. See State v. Barton, 626 S.W.2d 296 (Tenn. Crim. App. 1981) (citing Bennett v. State, 530 S.W.2d 788, 789 (Tenn. Crim. App. 1975); Sullivan v. State, 513 S.W.2d 152, 155 (Tenn. Crim. App. 1974); Arendall v. State, 509 S.W.2d 838, 842 (Tenn. Crim. App. 1974)).

were:

>Criminal Responsibility For Facilitation of Felony. A person is criminally responsible for the "facilitation of a felony" if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility as explained to you on page 12 of these instructions, the person knowingly furnished substantial assistance in the commission of the felony.

The section referred to from page 12 of the jury instructions was the following:

>A defendant is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense, the defendant solicits, directs, aids, or attempts to aid another person to commit the offense.

It is not uncommon for jurors to ask for clarification of instructions; and, given such a request, the trial court has authority to respond with a supplemental instruction. See State v. Forbes, 918 S.W.2d 431, 451-52 (Tenn. Crim. App. 1995) (finding no error for the court to provide supplemental instructions regarding circumstantial evidence, when supplemental instructions did not comment on specific evidence or trial testimony); State v. Chance, 778 S.W.2d 457, 461-62 (Tenn. Crim. App.), perm. app. denied (Tenn. 1989) (finding no error in supplemental instruction as to whether a printed name on a signature line constituted a signature); and Burton v. State, 394 S.W.2d 873, 875-76 (Tenn. 1965) (finding the trial court properly provided *sua sponte* a supplemental instruction regarding malice). The court in this case responded to the jury in the following manner:

>Now, I have tried to define what facilitation is as it relates to Count One, which is the count that has to do with someone being charged with being in possession of certain controlled substances for the purpose of delivery. I will do that, and it's in the Charge, it's obvious -- that facilitation of that offense is
>
>something a little less than the offense itself. And I have given the instruction as to criminal responsibility in the Charge. And I've given the instruction as to what the facilitation of that would be. That's a lesser included offense.
>
>THE FOREPERSON: Yes. We understand --
>
>THE COURT: Now, hold on a minute. Let me -- let me finish. I don't want to say too much here. And then I've also defined that in regards to the weapon. So I could say some things and give examples and -- and do a lot of things to sort of suggest

6

this, that or the other, but that is very, very shaky, delicate, whatever other type of word you'd use, because you are in the midst of your deliberations. And I don't want to do anything at all to in any way influence, however subtly it would be done or whatever word you'd use to describe it during that process.

Now, let me ask you a question. I've got facilitation defined in the Charge. And it is a lesser included offense. In other words, I think I can say without fear of contradiction or cause any problems that the facilitation of something is less serious under the law as you can figure out from reading the charge than the actual indicted offense. It is something, though, that the Court instructs you on, as it's required to, to give you the option of the charged offense, the facilitation of that offense or not guilty at all. That's basically what you're into here. Would it help you if I made everyone of you a copy of this jury instruction for you to mull over individually, because I just can't really start saying if it's this, it's this and that is this, this would be that. I just can't do that. You know, what I'm saying now is the Court of Appeals will review this. I know some of this is not as simple as it maybe could or should be, but I'm left with certain requirements, certain guidelines as to what these offenses are and what the lesser included offenses are. And I've set it out in this jury instruction about as well as I can. I know it's lengthy. And I know you're all being very, very conscientious. And I appreciate everyone of you, but I just really can't say too much more about what the difference is between one thing and the other, because it affects two counts. And all, I guess, I want to ask you to do is to read the instruction a little more. And I'd be more than happy to have my secretary make a copy of this instruction for each of you, individually, which I might should have done, to begin with. We don't usually do that. But, if that's an issue, I'll be glad to try to accommodate you any way that I can. But, in the final analysis, you, the Jury, now, in your deliberations, will obviously, need to consider the entire instruction and consider it all. I don't want to emphasize one part of it over the other. In other words, you've got this one question here about what the difference is between facilitation and what's possession. That's one aspect of the jury instruction. I would want you to consider the jury instruction in its totality and -- and read it all together. And the reason I'm saying if it would help you to give you each an individual copy, then -- then I would be more than happy to do that, you know.

So I just really -- I just really can't, frankly, Ms. Crispin, or the other Members of the Jury, get into explaining this and that, because once I start that, I get into something that is not my prerogative to do. No matter how you cut it, it will end up that way. And you, really, frankly, are the Jury that has to work out these issues. And I will respect the decision you reach, whatever it may be, but you're the one, really, who needs to reach it. And that's about the best I know how to answer that. I am very sorry I can't help you more, but --

THE FOREPERSON: Judge --

THE COURT: -- there are certain limits.

THE FOREPERSON: -- would it [be] appropriate to ask if any one of the jurors would like to have a copy?

7

THE COURT: Yes. It's fine. Yes. I'd be glad --

THE FOREPERSON: Would anyone like to have a copy?

JUROR: I don't think it's necessary.

The defendant argues that when the court responded to the jury by noting that "facilitation of that offense is something a little less than the offense itself," the court confused the jury by adding information that failed to distinguish between committing the felony itself, which required intent, and facilitating the commission of the felony, which required no intent on the part of the facilitating party. The defendant argues that facilitation of a felony is not "a little less than the offense itself" but is, following the logic of his argument, a great deal less because facilitation requires no intent to "promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense." Tenn. Code Ann. § 39-11-402. The defendant argues that there was no credible, direct evidence of his intent to commit a felony and that had the jury fully understood the distinction between commission of a felony and facilitation of the commission of a felony, he would have received the lesser sentence. However, the record shows sufficient proof of the defendant's acts as principal in the commission of this crime, particularly through the testimony of Rice.

The jury found the defendant guilty of Count I of the indictment, which charged him with possessing twenty-six grams or more of cocaine with intent to deliver. There was sufficient evidence for the jury to find that the defendant intended to benefit from the sale of cocaine to "Chris." Rice testified that she had telephoned the defendant to ask if he could get five ounces of cocaine for the sale to "Chris," and that the defendant responded that "he could get it" and could pick her up in "maybe thirty or forty-five minutes." She testified that the defendant told her she would receive an "eight-ball" for setting up the deal. He also told her that he had a gun and that she could be hurt if the sale was, in fact, a setup. As they were in the car together, prior to meeting Sergeant Bunch, the defendant showed "about five bags" containing drugs to Rice. He said that he was going to give one to Rice and keep one for himself, as he put one bag in each of his two shirt pockets.

8

Further, at the time of his arrest, the defendant had on his person a bag containing 2.7 grams of cocaine and another with 2.6 grams of marijuana. Also, two additional bags of cocaine, one with 14.2 grams and the other with 9.4 grams, were found in the driver's seat where the defendant ended up, sitting on top of Shields whom he had been pushing to get out of the driver's area. Based upon this evidence, a reasonable jury could find from the evidence that the $5,000 to be paid for the cocaine by "Chris" was not to be Rice's but was to go to her supplier, the defendant.

The jury also found the defendant guilty of facilitation of possession of a deadly weapon with intent to employ in the commission of, or escape from, an offense. According to evidence presented at trial, no readable prints were found on the gun. Although the defendant never used the gun, it was found where he had been sitting on the front passenger seat of the Maxima and was readily available and loaded. Therefore, there is evidence that would indicate the jury adequately made the distinction between commission of a felony and criminal responsibility for facilitation of commission of a felony.

The defendant additionally claims that the trial court's reference to review by this Court during the course of its answering the jury's question somehow relieved the jury of a sense of responsibility for its decision. The defendant speculates that the jurors might have been inclined to take the easy way out and simply find possession of cocaine with intent to distribute rather than the lesser included crime of criminal responsibility for facilitation of possession of cocaine with intent to distribute, knowing that if there were any problems with this decision, another court would sort it out. However, the trial court's reference to the appellate court was vague and cannot be read as suggesting that another court would alter the verdict or correct any errors. The defendant points to no proof to support a lack of serious commitment on the part of the jury. In fact, the record is to the contrary. Furthermore, knowledge of the availability of appeal is widespread enough to be considered general knowledge.

When supplemental instructions are given to the jury, there is an additional need for

9

the court to also "admonish the jury not to place undue emphasis on the supplemental instruction and to consider it in conjunction with the entire charge." <u>Forbes</u>, 918 S.W.2d at 451 (citing <u>Burton</u>, 394 S.W.2d at 876-77). In <u>Forbes</u>, the court concluded that supplemental instruction did not constitute reversible error, noting that:

> Although the jury's rather cryptic inquiry perhaps deserved no reply other than to continue deliberating, the court merely re-read a portion of the instructions the jury had already heard. The trial court did not comment on specific evidence or testimony introduced at trial. Moreover, while the supplemental instruction should have included an admonishment to place no undue emphasis upon it, the main charge to the jury included an instruction not to single out one instruction over any other.

<u>Forbes</u>, 918 S.W.2d at 452.

The written instructions of the trial court in this case included the admonition that, "The order in which these instructions are given is no indication of their relative importance. You should not single out one or more of them to the exclusion of another or others but should consider each one in the light of and in harmony with the others." The trial court made no reference in its supplemental instruction to any specific evidence or testimony introduced at trial, and emphasized again that, "I would want you to consider the jury instruction in its totality and read it all together." Thus, there was no error committed by the trial court in providing the supplemental instruction.

## II. Evidence of Defendant's Alias

Defendant's second claim on appeal is that the trial court erred in admitting evidence of an alias used by him. Defendant argues first that the evidence was not relevant and that, even if relevant, it should have been excluded under Tennessee Rule of Evidence 403 as unfairly prejudicial.

The standard for relevancy of evidence is set out in Tennessee Rule of Evidence 401, which states: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The test for admissibility is a lenient one. <u>See</u> Tenn. R. Evid. 401 Advisory Commission Comments. Preliminary

questions concerning the admissibility of evidence are determined by the court. See Tenn. R. Evid. 104.

The defendant's indictment identified him as "Frank Chester Bright, Jr., a.k.a Mervyn Jordan." We recognize the rule that "[w]here no proof is offered of use of an alias by an accused it should not be included in an indictment." Mallicoat v. State, 539 S.W.2d 54, 56 (Tenn. Crim. App.), cert. denied (Tenn. 1976). This rule is modified by a showing, made in good faith, by the State to prove the use of an alias. See Banks v. State, 556 S.W.2d 88, 90 (Tenn. Crim. App.), cert. denied (Tenn. 1977) (finding no error when State had attempted to prove that the accused used an alias in talking with police about another offense). See also State v. Holloman, 835 S.W.2d 42, 45 (Tenn. Crim. App.), perm. app. denied (Tenn. 1992) (finding no error where there was contradictory testimony as to use of an alias). In State v. Zirkle, 910 S.W.2d 874, 887 (Tenn. Crim. App.), perm. app. denied (Tenn. 1995), the court found no prejudicial error for the indictment to refer to the defendant's alias, when he had initially refused to identify himself to arresting officers who had then searched him and found identification bearing the alias. Likewise, in Young v. State, 566 S.W.2d 895, 899 (Tenn. Crim. App.), cert. denied (Tenn. 1978), it was not error for Larry Young's indictment to also bear the alias, "Alfred Davis," since he had identified himself by this name to police officers.

Testimony at trial indicated that, at the time of his arrest, the defendant told the police that his name was Mervyn Jordan and that he had a driver's license in his wallet in the name of Jordan. It was only during subsequent booking procedures, including fingerprinting, that the defendant's true name was determined to be Frank Chester Bright, Jr. We find that the alias was appropriately included on the indictment and was appropriately admitted as relevant evidence.

Defendant argues that evidence of the alias and the false driver's license should have been excluded by the trial court because "the unfair prejudice of this evidence can be said to substantially outweighed [sic] the minuscule, if any, probative value of that

evidence." Yet, the defendant offers no proof of any prejudice to him other than the assertion that the jury decided his case on "irrelevant evidence." Once the court has ruled that evidence is relevant, it is excluded under Rule 403 if, although relevant, "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. The defendant has proven none of these. He may not be happy with the fact that the jury knew he gave the police an alias or that he had a false driver's license in his wallet, but that is a situation of his own doing. We find no error as to this claim.[4]

### III. Sufficiency of the Evidence

Defendant's third claim is that the verdict was not supported by the weight of the evidence. Our standard of review when the sufficiency of the evidence is questioned is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. app. denied (Tenn. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the

---

[4]See State v. Stephenson, 878 S.W.2d 530, 540 (Tenn. 1994), for the finding that while an alias "should not be included in an indictment where there is no proof that the defendant on trial uses an alias, such error does not warrant reversal when there is no showing of prejudice to the defendant."

> testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (Tenn. 1963)).

The essential elements of the crime with which the defendant was charged, possession with intent to deliver twenty-six grams or more of a substance containing cocaine, a Schedule II controlled substance, are:

> (1) the defendant knowingly possessed twenty-six grams or more of a substance containing cocaine, a Schedule II controlled substance; and
>
> (2) the defendant intended to deliver such controlled substance.

Tenn. Code Ann. § 39-17-417.

The defendant argues that the testimony of Lisa Rice provided the only direct evidence of his knowing possession of cocaine and intent to sell it and that her testimony was so suspect as to be unbelievable. Defendant points to Rice's own criminal record and numerous convictions for truth-related crimes and to the fact that the only difference between the first trial, which resulted in a hung jury, and the second trial, which resulted in a conviction, was the fact that Rice testified only in the second trial.

The trial court specifically instructed the jury that Rice was an accomplice, as a matter of law, and told the jury that in order for the defendant to be convicted, her testimony would have to be corroborated. The trial court also instructed the jury that Rice was a witness with a history of prior criminal activity and they could consider that in determining her credibility. Viewed in a light most favorable to the State, the record provides amble corroborating evidence of Rice's testimony.[5] Additionally, the witness's credibility was, as we have noted, a matter for the trier of fact to determine. The jury heard the testimony of Rice; knew her role in this crime and her background; and nevertheless

---

[5] See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978), for a statement of the rule that, upon a conviction, all conflicts in testimony are resolved in favor of the State, and that on appeal, the State is entitled to the strongest legitimate view of the trial evidence and all "reasonable or legitimate inferences which may be drawn therefrom."

apparently found her credible and her testimony persuasive. Such is the prerogative of the jury, and we will not impinge upon that prerogative.

## IV. Sentencing Issues

The defendant's fourth and last claim of error is that his sentence was not appropriate. He was sentenced as a career offender in accordance with Tennessee Code Annotated § 40-35-108(a)(1), which defines a career offender as a "defendant who has received: (1) Any combination of six (6) or more Class A, B or C prior felony convictions, and the defendant's conviction offense is a class A, B or C felony." The State produced documentation in its sentencing memorandum of six separate, prior Class C felony convictions; and the conviction offense now on appeal is a Class B felony. Having found the defendant to be a career offender, the trial court proceeded to sentence him as is required by Tennessee Code Annotated § 40-35-108(c) to the maximum sentence within the applicable Range III, which in this case is thirty years.

When a defendant challenges the length, range, or manner of service of his sentence, the appellate court conducts a de novo review on the record. See Tenn. Code Ann. § 40-35-401(d). There is a presumption that the determinations made by the trial court are correct. See id. The burden of showing that the sentence is improper is upon the appellant. See id. Sentencing Commission Comments.

The defendant argues two grounds to support his contention that his sentence was inappropriate. First, he argues that his sentence was "cruel and unusual," and therefore violative of his constitutional rights under the U.S. Constitution's Eighth Amendment. Because the defendant offers no proof, for instance, he does not seek to show that the sentence is disproportionate to the crime, we can only surmise that his claim is based on the severity of the mandatory sentence as a career offender. The United States Supreme Court has responded to a "cruel and unusual" claim based on the severity of a mandatory sentence: "Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense. . . . There can be no serious contention, then, that a sentence which

14

is not otherwise cruel and unusual becomes so simply because it is 'mandatory.'" Harmelin v. Michigan, 501 U.S. 957, 994-95, 111 S.Ct. 2680, 2701, 115 L.Ed.2d 836 (1991).

In State v. Russell, 866 S.W.2d 578, 581 (Tenn. Crim. App. 1991), perm. app. denied (Tenn. 1992), this Court noted that Tennessee's courts have held that the habitual criminal statute does not violate the constitutional protection against cruel and unusual punishment. See Pearson v. State, 521 S.W.2d 225, 229 (Tenn. 1975); State v. Kilby, 763 S.W.2d 389, 393-94 (Tenn. Crim. App.), perm. app. denied (Tenn. 1988); Mullins v. State, 571 S.W.2d 852, 857-58 (Tenn. Crim. App. 1978), cert. denied, 440 U.S. 963 (1979); Janow v. State, 567 S.W.2d 483, 485 (Tenn. Crim. App.), cert. denied (Tenn. 1978); Frazier v. State, 480 S.W.2d 553, 554 (Tenn. Crim. App.), cert. denied (Tenn. 1972). The Revised Criminal Code of 1989, which repealed the habitual criminal classification, reflects a continuing legislative intent to incarcerate those with lengthy criminal records. See Russell, 866 S.W.2d at 581. The record supports the finding of the trial court that the defendant was a career offender. He was convicted of second-degree burglary[6] on six separate occasions and, as the trial court noted, there were other charges in his record. There has been no violation of the defendant's constitutional right to be free from cruel and unusual punishments.

Defendant's second ground is that his sentence was "grossly disproportionate" to that received by his two co-defendants, each receiving ten years or less on alternative sentences. In Harrison v. State, 455 S.W.2d 617, 618 (Tenn. Crim. App. 1970), the defendant argued on appeal that his thirty-year sentence for armed robbery, imposed by jury verdict following his plea of not guilty, was excessive in view of the ten-year sentences imposed on two co-defendants who entered guilty pleas. In this case, as in Harrison, the fact that the co-defendants chose to accept certainty rather than risk the outcome of a trial does not now afford the defendant a basis for contesting the sentence imposed upon him. In State v. Groseclose, 615 S.W.2d 142, 149 (Tenn. 1981), cert. denied, 454 U.S. 882 (1981), the court noted that "each of the accused persons had to be considered separately

---

[6]Second-degree burglary was a daytime burglary of a residence. That same crime is now aggravated burglary under Tennessee Code Annotated § 39-14-403.

and on its own individual merits." The Groseclose jury did not act arbitrarily or capriciously in imposing a lesser life imprisonment sentence on a co-defendant in a murder trial based on the "absence of any prior criminal record, duress or domination by another person, youth of the accused and contrition and remorse." Id.

Twelve mitigating factors similar to prior law are set out in Tennessee Code Annotated § 40-35-113. The list is not exclusive, and the trial judge may consider "any other factor consistent with the purposes of this chapter." Id. The record includes the sentencing of co-defendant Shields who pleaded guilty to a lesser charge. At the time of sentencing, Shields was a 29-year-old, single mother of six children, ages 12 and under. The trial court recognized the abusive influence of the defendant in Shields's life, her lack of a serious criminal record, the strong moral support of Shields's mother, and the needs of her children. Shields received an eight-year sentence. She was placed on probation for five years, ordered to serve thirty days in prison, and placed on intensive probation for ninety days and regular probation for the remaining term. The record does not clarify the sentence of co-defendant Rice, but it is clear that she was in prison for a year prior to the first trial; that she pleaded guilty to all charges; and that her testimony in the second trial was key to the conviction of the defendant. Thus, we find no error in the differing sentences among the parties to this crime.

## CONCLUSION

Based upon the record and the authorities set out herein, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE

CONCUR:

16

_____

JOSEPH M. TIPTON, JUDGE


_____

JOE G. RILEY, JUDGE